Merrimack
No. 98-204

PETER DEVERE

v.

ATTORNEY GENERAL

September 20, 2001

*Backus, Meyer, Solomon, Rood & Branch*, of Manchester (*Jon H. Meyer* on the brief and orally), for the plaintiff.

*Philip T. McLaughlin*, attorney general (*Martha A. Moore*, assistant attorney general, on the brief, and *Andrew B. Livernois*, attorney, orally), for the State.

DUGGAN, J. The State appeals from a Superior Court (*McGuire*, J.) order interpreting RSA 260:14, III (Supp. 2000) of the Driver Privacy Act to require disclosure of certain motor vehicle records to the plaintiff, Peter DeVere. We reverse and remand.

In August 1997, the plaintiff, a principal organizer of NH DWI Volunteers and an advocate of drunk driving related legislation, submitted a request to the New Hampshire Division of Motor Vehicles (division) under the Right-to-Know Law, *see* RSA ch. 91-A (1990 & Supp. 2000), seeking the names, home towns and license plate numbers for all one, two, three and four digit plates issued by the division from November 1, 1996, through December 15, 1997. The division denied his request as being inconsistent with the requirements of RSA 260:14. The plaintiff then filed a petition in superior court seeking disclosure of the information under RSA 260:14, III. In his petition, the plaintiff stated that he was seeking release of the information to cross-reference the names of persons who had been issued low-digit plates with the names of persons who had contributed to the Governor's campaign. The plaintiff asserted "that the public has the right to be informed as to whether or not the

Governor is violating the Constitution by giving out low digit license plates to campaign contributors, which is against the law, and that certain individuals are being treated differently than the ordinary citizen, and are receiving special treatment in the form of low digit plates." The plaintiff later amended his petition to seek relief under RSA 260:14, V (a)(2), V (a)(4) and VIII. At the hearing, the plaintiff testified that he needed the motor vehicle records in order to provide testimony regarding his findings to the senate transportation committee, which was considering legislation related to the issuance of low-digit license plates.

The superior court granted the petition, finding that the plaintiff's request for the records was "for the purpose of legislative research" and ruling that "such research is 'official business' for purposes of RSA 260:14, III." The State filed a motion for reconsideration, arguing that RSA 260:14, III was intended to apply solely to government officials. The court denied the motion, but amended its prior order to restrict the plaintiff's use of the motor vehicle information to the official business described in his request, i.e., legislative research related to the pending legislation, and prohibiting disclosure to any unauthorized person.

On appeal, the State argues that the superior court's decision is at odds with the language and the purpose of the Driver Privacy Act. We agree.

In recent years both the State and federal governments have enacted laws aimed at protecting the privacy of personal information contained in motor vehicle records. See RSA 260:14; 18 U.S.C. §§ 2721-2725 (1994 & Supp. IV 1999). In enacting the federal legislation, Congress was concerned that many States were selling information contained in motor vehicle records to individuals and businesses producing "significant revenues for the States." Reno v. Condon, 528 U.S. 141, 143-44 (2000). The sponsor of this State's legislation was also concerned that access to personal information contained in motor vehicle records made domestic violence and stalking victims vulnerable to their assailants. See SENATE COMM. ON TRANSPORTATION, HEARING ON HB 1508-FN (April 3, 1996).

In 1994, Congress passed the Driver's Privacy Protection Act (DPPA), which regulates the authority of state motor vehicle departments to disclose information contained in their records. The DPPA establishes a general rule prohibiting any State from disclosing personal information in a driver's motor vehicle records without the driver's "affirmative consent." Reno, 528 U.S. at 145 (citing 18 U.S.C. § 2721 as amended in 1999). The DPPA permits nonconsensual disclosure to governmental entities and in limited

circumstances to private individuals. 18 U.S.C. § 2721 (b). The DPPA subjects both private parties and state agencies that violate the statute to substantial fines. 18 U.S.C. § 2723 (b).

In 1996, the State legislature enacted the Driver Privacy Act to comply with the DPPA. *See* Laws 1996, ch. 295; *see also* SENATE COMM. ON TRANSPORTATION, HEARING ON HB 1508-FN, *supra*. The statute purports to conform with the DPPA by setting forth a general rule that motor vehicle "records shall not be public records or open to the inspection of any person." RSA 260:14, II (a). "Person" under the statute is defined to include any "individual, organization or entity but shall not include this state or an agency thereof." RSA 260:14, I(b).

In construing a statute, we begin with an examination of the statutory language. *Atwood v. Owens,* 142 N.H. 396, 398 (1997). As we examine the language, we do not merely look at isolated words or phrases, but instead we consider the statute as a whole. *See Appeal of Ashland Elec. Dept.,* 141 N.H. 336, 341 (1996). In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language "in light of the policy sought to be advanced by the entire statutory scheme." *Appeal of Mascoma Valley Reg. School Dist.,* 141 N.H. 98, 100 (1996) (citation omitted).

RSA 260:14, III provides:

> Motor vehicle records may be made available in response to a request from a state, a political subdivision of a state, pursuant to a court order, the federal government, or a law enforcement agency for use in official business. The request shall be made on a case-by-case basis.

In ruling that the plaintiff was entitled to the motor vehicle records under RSA 260:14, III, the superior court did not interpret "pursuant to court order . . . for use in official business" as limiting disclosure to governmental officials. Instead, the court looked to the plaintiff's intended use of the information. Because the plaintiff sought the information to prepare testimony for a legislative hearing, a function of government, the court determined it constituted "official business." Accordingly, the superior court concluded that the plaintiff was entitled to "a court order" instructing the department to release the motor vehicle records under RSA 260:14, III.

We do not read section III of the statute as allowing disclosure to a private party "pursuant to a court order" whenever

the private party asserts such disclosure is related to a governmental function. Here, the plaintiff sought the information to provide testimony to the senate transportation committee. In providing such testimony, the plaintiff was not acting as a governmental official, but as a private citizen. *Cf.* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1567 (unabridged ed. 1961) (defining "official" as "derived from the proper office, officer or authority"). In contrast, it is the senate's official business to gather information and conduct hearings relative to proposed legislation. Therefore, under section III the senate may obtain information for use in considering legislation. In fact, the record reveals that Senator Deborah Pignatelli requested and the division provided a list of the names, hometowns, and license plate numbers of persons holding registration numbers one through one thousand when considering legislation in 1998. Our reading of the statute as a whole leads us to conclude that this is the kind of official business envisioned by section III.

On the other hand, section V of RSA 260:14 permits disclosure for private use by nongovernmental entities. When disclosure is made under section V, "the use of the records [is] strictly limited to [the permitted use] as specified in the request." RSA 260:14, V (a). Section V further provides that a person may elect to prevent disclosure to these nongovernmental entities of his own personal information at any time. RSA 260:14, V (b)(1).

█ The structure of the statute as a whole indicates that the legislature intended section III and section V to operate independently. Section III of the statute applies when the request for information comes from a governmental entity, including a court, and section V applies when the request comes from a nongovernmental entity, such as the plaintiff. An examination of the entire statutory scheme compels this conclusion because the statute provides: (1) the segregation of different entities listed in sections III and V; (2) the different levels of disclosure of personal information under sections III and V; and (3) the opt-out procedure available only under section V.

First, by its plain language section III is limited to governmental agencies. It specifically covers requests made by a State, a political subdivision of a State, the federal government and law enforcement agencies, as well as pursuant to a court order. By contrast, section V of RSA 260:14 permits access for private nongovernmental entities, including a legitimate business, RSA 260:14, V (a)(1), (4), a bank, RSA 260:14, V (a)(3), an employer, RSA 260:14, V (a)(7), an

insurer, RSA 260:14, V (a)(7), and a public utility, RSA 260:14, V (a)(9). On its face, each section permits disclosure to different types of entities seeking access to motor vehicle records.

Second, in sections I, II and V of RSA 260:14, the legislature specifically provided different levels of access to motor vehicle records depending on the type of entity seeking disclosure. Disclosure under section III includes all personal information contained in the record including a driver's photograph, computerized image and social security number. Disclosure under section V excludes these items of personal information. Clearly, the additional information available under section III is information that could be critical for a governmental agency to have in performing its official function, for example, in investigating criminal activity. Because the purpose of section III is to allow governmental entities access to driver records, disclosure of personal information under section III is unrestricted. In contrast, since the purpose of section V is to allow private entities limited access to personal information, access under this section is restricted.

■ Finally, the restriction on disclosure to private parties under section V is further limited by an "opt out" provision. Section V provides that even if the department allows access to motor vehicles records under section V, a driver can choose to prevent public access to his or her records. There is no comparable opt out provision under section III. Section III provides for nonconsensual disclosure of personal information. If section III were routinely available to private individuals as a way of gaining access to motor vehicles records, the purpose of the statute would be undermined. Viewing the statute as a whole, we conclude that the legislature intended that private parties satisfy the requirements of section V before obtaining access to motor vehicle records.

The plaintiff argues that by including the phrase "pursuant to a court order" the legislature intended section III to apply to a private party. According to legislative history, section III as originally drafted only included the word "court." During a legislative hearing, a concern was raised about whether a person who had been involved in an accident could get access to the other driver's motor vehicle record. *See* SENATE COMM. ON TRANSPORTATION, HEARING ON HB 1508-FN, *supra.* The bill's sponsor pointed out that subsection V (a)(2) would allow a private party to request the motor vehicle record from the department of safety "in connection with any civil, criminal, administrative or arbitral proceeding in any court or government agency." *Id.* The sponsor acknowledged that

the 'opt' out provision could prevent disclosure under this section so that, in some cases, the nonconsensual disclosure provision in section III would have to be used. *Id.* In an attempt to clarify this distinction, the sponsor agreed to change the wording of section III from "court" to "pursuant to a court order." *Id.*

██ We agree with the plaintiff that the statute's legislative history shows that in certain circumstances, a court can issue an order requesting disclosure of a motor vehicle record for the benefit of a private party, but this change in wording does not evidence an intent to effectuate a wholesale change in the statutory scheme. In light of the statute's general prohibition against disclosure, this procedure that allows a private party limited access to motor vehicle records cannot be read to provide a general right of access to private parties simply by invoking the court's status as a governmental agency. Rather, section III is intended to allow a court to request a motor vehicle record for a litigant in connection with other pending litigation. Were we to adopt the plaintiff's reading of section III, that section would not only swallow up section V, it would make the limitations on consent and the scope of disclosure meaningless.

██ Despite the superior court's ruling that the plaintiff's intended use was for official business, the plaintiff argues in his brief that the phrase "official business" in section III does not modify the phrase "pursuant to a court order." He contends a court can order disclosure of motor vehicle records under section III even if the records are not for official business. In support of this argument, the plaintiff cites "[t]he general rule of grammar and law . . . that the relative terms refer to the next preceding antecedent, unless it is clear from the context that a different one was intended." *Piper v. Railroad*, 75 N.H. 435, 442 (1910). Based on this rule, the plaintiff asks us to conclude that the absence of a comma after law enforcement means that "official business" only modifies "law enforcement." When examining statutory language, however, we do not merely look at isolated phrases, but construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd result. *See Appeal of Ashland Elec. Dept.*, 141 N.H. at 340. Adopting the plaintiff's interpretation of section III would mean that federal, state and local officials could obtain access to motor vehicle records for other than official business. In light of our analysis of the statutory scheme above, we do not agree that the legislature intended such a result.

Finally, the plaintiff urges us to rule that even if he was not entitled to access under section III, he was entitled to access under RSA 260:14, V (a)(2) and (4). The plaintiff first raised the section V claim in the superior court. He did not request access from the division as required by section V. *See* RSA 260:14, V (a). The State, however, asserted at the hearing that the division would not provide the records under section V because the division's regulations define "legitimate business" in section V to include only businesses that receive compensation in connection with their work. *See* N.H. ADMIN. RULES, Saf-C 5601.08. In response, the plaintiff argues that this definition of legitimate business is statutorily and constitutionally infirm.

■ The superior court did not determine whether the records were available to the plaintiff under section V. As such, the superior court did not consider what effect, if any, the federal DPPA would have on disclosure pursuant to section V. *Compare* 18 U.S.C. § 2721 (b)(5) (permitting disclosure for use in "research activities" but restricting use of personal information) *and* 18 U.S.C. § 2721 (b)(11) (permitting disclosure for any use in response to request for individual motor vehicle records if State has obtained express consent from individual to whom such personal information pertains) *with* RSA 260:14, V (b)(1) (permitting disclosure to legitimate business for use connected with motor vehicles or driver safety but limiting use to that specified in request and implying consent unless individuals elect not to have personal information available). In deciding whether the plaintiff is entitled to the records under section V, the superior court would also have to consider the applicability of the federal statute to such a request, and therefore we cannot say, based on this record, that the superior court would have reached the same result if it had addressed the section V issues. *But cf. Appeal of Sturm, Ruger & Co.*, 124 N.H. 506, 508-09 (1984) (holding use of different standard not ground for reversal if same result reached under correct standard). Accordingly, we reverse and remand to the superior court for further proceedings consistent with this opinion.

*Reversed and remanded.*

HOLLMAN, GROFF and FAUVER, JJ., superior court justices, specially assigned under RSA 490:3, concurred; LYNN, J., superior court justice, specially assigned under RSA 490:3, dissented.

LYNN, J., superior court justice, specially assigned under RSA 490:3, dissenting. I believe the majority has construed the protec-

tive purposes of the New Hampshire Driver Privacy Act (DPA), RSA 260:14 (Supp. 2000), more broadly than the General Court intended, and that this error has led the majority to impose a judicial gloss on section III of the DPA that is at odds with both the plain language of the statute and its legislative history.

I

RSA 260:14, III states:

> Motor vehicle records may be made available in response to a request from a state, a political subdivision of a state, pursuant to a court order, the federal government, or a law enforcement agency for use in official business. The request shall be on a case-by-case basis. Any records received pursuant to this section shall not be further transferred or otherwise made available to any other person or listed entity not authorized under this paragraph.

Initially, I note my agreement with the majority that the qualifying phrase "for use in official business" in section III should be construed to modify all the terms which precede it, not simply the term "law enforcement agency." Thus, any of the governmental agencies, including a court, which requests information pursuant to section III must do so for use in the official business of the agency. But, as applied to the courts, this qualifying language simply means, for example, that a judge cannot issue an order for disclosure of personal motor vehicle information to satisfy his or her idle curiosity or for some other non-official purpose. To be valid, the order must be issued in pursuance of some official business of the court. It does not follow, however, as the majority seems at one point to suggest, *see supra* p. 766, that section III disallows a court from ordering disclosure to a private party — whether or not such party intends to use the information for a "governmental function." What the majority overlooks in making this suggestion is the fact that resolving disputes between private parties or between private citizens and the government is a quintessential part of the "official business" of the courts. Therefore, I would read RSA 260:14, III to mean that a court has the authority to issue an order for disclosure of personal motor vehicle information whenever a party — whether a governmental agency or a private citizen — has properly invoked the court's jurisdiction. Notably, this is exactly the manner in which the department of safety has itself construed the statute. *See* N.H. ADMIN. RULES, Saf-C 5601.12 (2000) ("'Official business' means

business which is conducted by a government agency, including executive, judicial, and legislative branches, to fulfill its statutory or constitutional responsibilities."); *id.* 5602.06(b) (2000) ("[P]ursuant to RSA 260:14, III, 'court orders' means an order of a New Hampshire court with proper jurisdiction which compels the department to release specific motor vehicle record information for official business of the court, except where prohibited by RSA 260:14."). Indeed, if RSA 260:14, III is read as limiting a court's authority to issue disclosure orders to situations where the request comes from a governmental agency, the "pursuant to a court order" language is rendered largely superfluous, since the statute allows government agencies to obtain personal motor vehicle information without the need for a court order. It is well settled that RSA 498:1 (1997) gives the superior court equity jurisdiction to act on matters of discovery whether or not the information sought relates to litigation pending before the court. *See Robbins v. Kalwall Corp.*, 120 N.H. 451 (1980), and cases cited therein.

The majority argues that to construe section III in the manner I advocate would undermine the intent of the legislature by making personal motor vehicle information, which is subject to restricted disclosure to private parties under section V of the DPA, "routinely available." To understand why I disagree with the majority on this point it is necessary to review the DPA and the federal statute on which it is based, the Driver's Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721-2725 (1994) (amended 1996, 1999, 2000), in some detail.

There is no doubt that both the federal and state statutes were designed to afford a measure of privacy protection to personal information contained within state motor vehicle records. The primary evils at which the legislation was directed were twofold: (1) that many state motor vehicle departments were generating "significant revenues" by selling the personal information contained within motor vehicle records to private individuals and businesses, which resulted in citizens being flooded with an ever-increasing amount of "junk mail" and unwanted solicitations, *see Reno v. Condon,* 528 U.S. 141, 143-44 (2000); and (2) that the unrestricted public availability of such information facilitated the efforts of stalkers, domestic abusers and other miscreants to locate their prey. *See* N.H. SENATE COMM. ON TRANSPORTATION, HEARING ON HB 1508-FN (April 3, 1996). To remedy these problems, the statutes establish a general rule prohibiting the disclosure of personal information contained within motor vehicle records. *See* 18 U.S.C. § 2721(a); RSA 260:14, II(a).

At the same time, however, lawmakers recognized that there are many legitimate reasons for which personal information contained within motor vehicle records should be accessible. Thus, after specifying certain purposes for which state motor vehicle departmentments *must* disclose personal information contained within their records, the DPPA goes on to list eleven broad categories of reasons for which such information *may* be disclosed whether or not the person to whom the information pertains consents, 18 U.S.C. § 2721(b)(1)-(10), (14), and three additional categories for which such information *may* be disclosed with the "express consent" of the person to whom the information pertains, 18 U.S.C. § 2721(b)(11)-(13). Although structured somewhat differently than its federal counterpart, the DPA generally follows the DPPA in carving out a series of mandatory, RSA 260:14, IV(a), and permissive, RSA 260:14, III, V, exceptions to the prohibition against disclosure. In sum, a reading of the statutes as a whole shows that the DPPA and the DPA were intended *both* to provide protection against improper use of personal information contained in motor vehicle records *and to allow access to such information for legitimate purposes. See* HEARING ON HB 1508-FN at 1 (remarks of Rep. Kurk, prime sponsor of the bill) ("The bill requires the Department of Safety to keep driver and vehicle records confidential from those people such as stalkers who might misuse the information, while at the same time allowing access for legitimate business, legal and journalistic purposes."). I believe the majority's construction of RSA 260:14, III pays too little heed to the latter objective.

While the DPPA provides the minimum level of privacy protection which States are required to afford personal information contained in motor vehicle records, States are free to afford such information greater protection. A comparison of the federal and state statutes shows that the General Court chose to provide somewhat greater protection to New Hampshire citizens than the federal statute demands. But, in my view, the legislative history of the DPA convincingly demonstrates that the legislature did not intend to go as far as the majority does by its holding in this case.

The DPA provides greater privacy protection than the DPPA in three principal respects. First, while the DPPA allows disclosure of a person's photograph or computerized image and social security number (*i.e.*, "highly restricted personal information," 18 U.S.C. § 2725(4)) for any purpose specified in section 2721(b) if the person has given express consent (and for some purposes without express consent, *see* 18 U.S.C. § 2721(a)(2)), the DPA appears to prohibit the disclosure of a person's photograph, computerized image and social

security number even if consent has been given. *See, e.g.,* RSA 260:14, V(a)(8) (*"Except for a person's photograph, computerized image and social security number* . . . motor vehicle records may be made available . . . (8) [f]or bulk distribution for surveys, marketing or solicitations, provided that the express consent of each person to whom such motor vehicle records pertain has been obtained." (emphasis added)). *But see* RSA 260:14, VII. Second, unlike subsection 2721(b)(3) of the DPPA, which allows disclosure of a person's motor vehicle records to *any* legitimate business to verify the accuracy of information which that individual has submitted to the business, the DPA allows disclosures for this purpose only to "a banking or similar institution," RSA 260:14, V(a)(3). Third and most significantly, while the DPPA allows disclosure of "personal information" (but not "highly restricted personal information") regardless of consent for a wide variety of purposes, paragraph V(b) of the DPA contains a broad "opt-out" provision, which allows a person to bar disclosure for any purpose otherwise authorized by paragraph V(a) that does not require express consent.

Among the purposes for which section 2721(b) allows even "highly restricted personal information" (and all other "personal information") to be disclosed without the consent of the driver to which it pertains are the following:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> . . . .
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State or local court.

Similarly, RSA 260:14, V(a) authorizes the disclosure of personal information contained in motor vehicle records:

> (2) For use with respect to a request for a named person's motor vehicle records in connection with any civil, criminal, administrative or arbitral proceeding in any court or government agency, including the service of process and the

execution or enforcement of judgments and orders, pursuant to an order of the court or agency.

But, as noted, the DPA allows a person to avoid disclosure under subparagraph V(a)(2) (or any other subparagraph of paragraph V(a)) by the simple expedient of exercising the subparagraph V(b)(1) "opt-out." As the majority recognizes, during the Senate hearing on the bill which ultimately became the DPA, the prospect that a person involved in litigation wherein his or her motor vehicle records were highly relevant might be able to avoid disclosure by exercising the "opt-out" was specifically considered. The legislative history plainly reveals that the sponsors of the bill agreed that such a result should not obtain, but instead understood that section III of the DPA would be available to obtain court-ordered disclosure in such circumstances. HEARING ON HB 1508-FN at 3 (colloquy between Sen. Russman and Rep. Kurk).

Despite its initial suggestion that only government agencies can obtain a court order under section III, the aforesaid legislative history ultimately leads the majority to concede that "in certain circumstances, a court can issue an order requesting disclosure of a motor vehicle record for the benefit of a private party . . . ." *Supra* p. 768. In my view, this concession is fatal to the basic premise on which the majority's analysis is predicated: "that the legislature intended section III and section V [of the DPA] to operate independently." *Supra* p. 766. If a court order under section III can be utilized to overcome exercise of the "opt-out" and force disclosure of information that, in the absence of the opt-out, would be available pursuant to subparagraph V(a)(2), then there is no logical reason why section III should not also be available, in appropriate circumstances, to compel disclosure of information that, absent exercise of the opt-out, would be available under subparagraphs V(a)(1) and (3)-(7), or for other proper purposes. Certainly there is nothing in the text of section III that suggests requests for disclosure in connection with civil, criminal, administrative or arbitral proceedings (those covered by subparagraph V(a)(2)) should enjoy a preferred status when it comes to overriding the opt-out.

Given the legislative aim of balancing the privacy interests of motorists against the legitimate needs for disclosure, the most sensible reading of the "pursuant to a court order" language found in section III is that it reflects the legislature's recognition that the statute could not hope to catalog in advance all possible situations in which the balance should be struck in favor of disclosure. Under-

standing this limitation, the legislature wisely included within section III a provision which allows the court to strike the balance "on a case-by-case basis." RSA 260:14, III. The need for such a disclosure safety-valve would seem to be particularly important in light of the broad opt-out provision contained in paragraph V(b). As this case demonstrates, without section III, many requests for disclosure that are indisputably in the public interest would be blocked.

The majority is apparently concerned that construing section III to allow disclosure "pursuant to a court order" for any legitimate reason determined by the court "would not only swallow up section V, [but] it would make the limitations on consent and the scope of disclosure meaningless." *Supra* p. 768. Even if these predictions were accurate, they would not justify ignoring both the plain text of section III and the legislative history, neither of which support the thesis that disclosures under section III and under section V were intended to be mutually exclusive. *See Scheffel v. Krueger*, 146 N.H. 669, 671 (2001) ("We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include."). More importantly, I believe the majority's concerns are overstated.

First, requesting disclosure by court order pursuant to section III is considerably more onerous than requesting disclosure under section V. While a person requesting disclosure under section V simply submits a form to the department of safety, a person seeking a court order must file a petition in court, pay the required filing fee, arrange to have orders of notice issued and served on the department, and appear at a hearing to persuade a judge that the request is justified. The expense involved and the relatively formalized nature of the judicial process is likely to discourage casual applicants, and will tend to confine section III disclosure requests to those serious applicants who are confident they can demonstrate a real and substantial need for the information.

Second, the mere fact that section III grants a court authority to order disclosure in circumstances where section V does not, hardly means that the court must order disclosure, or even that the court will be inclined to do so. In making a case-by-case decision whether disclosure should be ordered, the court should of course consider whether the materials sought could be obtained pursuant to section V. Where disclosure can be had pursuant to section V, the court would generally be justified in refusing even to entertain a request under section III until the applicant has first exhausted his

administrative remedies by seeking disclosure from the department of safety pursuant to section V. On the other hand, where disclosure is not allowed under section V, the court normally should weigh this as a factor that counsels against disclosure; the court's task is then to determine whether, under all the circumstances, this factor is outweighed by other factors which make disclosure appropriate. Naturally, the burden of proof must rest upon the applicant, whose need to make a sufficient showing of merit to satisfy the critical scrutiny of a superior court judge makes it quite implausible that disclosure orders under section III will be granted as a matter of course. In fact, while the majority is concerned that upholding the superior court's ruling in the present case would lead to routine circumvention of the strictures of section V, I suspect that in reality most requests by private parties for court-ordered disclosure will be made in situations where the sought-after information is needed in connection with some pending or anticipated judicial or administrative proceeding. This is exactly the kind of disclosure which the majority says can be ordered despite the strictures of section V. Requests of the kind at issue here, which seek disclosures regarding a class of motorists rather than a particular individual, are apt to occur with considerably less frequency.

Third, a court acting pursuant to section III has broad authority to place conditions and limitations on disclosure that are designed to effectuate an appropriate balancing of interests in a particular case.

Fourth, the majority may be troubled that section III itself provides no specific standards by which a court is to determine whether a disclosure request should be granted. I agree that it would have been better if the legislature had specifically articulated the factors which a court should consider in ruling on a section III disclosure request. But merely because the legislature has seen fit to entrust courts with broader discretion than we might prefer is not a reason for disallowing the exercise of that discretion. As noted previously, it may well be that the legislature felt the factors which could properly have a bearing on the propriety of disclosure were so diverse as to make any effort at a comprehensive listing impossible.

## II

Since I conclude that section III of the DPA grants the superior court authority to order disclosure of personal motor vehicle information for legitimate reasons, I next consider whether the superior court properly found that a legitimate reason had been shown in this case. I answer that question in the affirmative.

The plaintiff sought disclosure of the names, home towns and license plate numbers of all holders of four digit and lower plate numbers so that he may compare them with the list of individuals who have made political contributions to the Governor's campaign. Because the plaintiff pressed for disclosure regardless of whether any or all low digit plate holders had exercised the paragraph V(b) opt-out, his request obviously exceeded the authority of the department, which has no power to override the opt-out. Consequently, whether or not the plaintiff's request might otherwise fall within the terms of subparagraphs V(a)(1) or (4), there is no exhaustion of remedies issue presented in this case. *See Metzger v. Town of Brentwood*, 115 N.H. 287, 290 (1975) (exhaustion not required where the administrative agency lacks authority to act).

The factors which lead me to conclude that the superior court acted properly in granting this request are as follows. First, there is not, and cannot be, any dispute that establishing the connection, which the plaintiff alleges exists, between campaign contributions and receipt of low number plates is a matter of legitimate interest to the public and the legislature. One need not accept the plaintiff's view that it is improper for political leaders to reward their supporters with low digit plates to recognize that, if this practice is occurring, the public at least has the right to know about it. The fact that the information sought by the plaintiff is available upon request of the legislature itself, and that a member of the Senate made such a request for *some* of the same information sought by the plaintiff, is, in my view, irrelevant to the question before us. A citizen's right to obtain information for a legitimate purpose under RSA 260:14, III should not turn on the happenstance that his or her request also piques the interest of a member of the legislature. Second, there is not the slightest evidence in the record that the plaintiff has an ulterior motive or that his request implicates any of the core evils at which the DPPA or the DPA were addressed. No one suggests, for example, that the plaintiff's real goal is to hawk to low digit plate holders the latest "new and improved" brand of toothpaste, or that he is bent on learning the whereabouts of a woman who has spurned his advances.

Third, the superior court carefully limited the extent of the information to be disclosed. The order covers only low digit plates issued during a limited fourteen-month time frame. Under the order, only the town where the plate holder resides, not his or her exact address, will be made available. The court presumably believed that this would provide sufficient information to allow a

match-up of names with publicly-available campaign contribution reports without revealing to the plaintiff where all low digit plate holders reside. The court also denied the plaintiff's request for disclosure of correspondence between low digit plate holders and the Governor or the commissioner of safety. In addition, the court limited the use of the information to the plaintiff's efforts in connection with the legislation pending before the Senate, and precluded any disclosure, republication or distribution of the information to any unauthorized person.

Fourth, the diminished expectation of privacy of the class of persons about whom disclosure is sought is a critical consideration in this case. It is common knowledge that at least the vast majority of low digit license plates are not issued by accident. Rather, such plates have become a highly sought-after status symbol — in effect, they are intended to announce to the world that the driver of the vehicle to which they are attached is a person of stature, someone to be reckoned with, a VIP, if you will. As the plaintiff's brief aptly explains, "instead of seeking the relative anonymity of standard plates, [the holders of low digit plates] have asked for public attention." Having voluntarily sought public exposure, it is ironic that the holders of low digit license plates are now the beneficiaries of the majority's desire to protect their privacy interests — a protection that comes at the expense of a disclosure which undeniably furthers the public interest.

Finally, although the plaintiff before us may be a gadfly of the driver safety movement, we should be mindful that the decision rendered today would be equally applicable to a request for disclosure made by the *Concord Monitor*, the *Union Leader* or any other representative of the mass media. While it is both unwise and unnecessary to reach the constitutional issues raised by the plaintiff, it is nonetheless worth remembering that open access to the workings of the government is the constitutional norm in New Hampshire. N.H. CONST., pt. I, art. 8. The legislature has the authority to depart from that norm when necessary to further other important interests, but we should be reluctant to find that it has done so unless the legislature has spoken with unmistakable clarity. Such clarity is lacking here.

### III

For the reasons stated above, I respectfully dissent.