ROBIN F. WYNNE, Associate Justice hThe Arkansas State Police and Bill Sadler, in his official capacity as custodian of records for the Arkansas State Police (collectively, the ASP), appeal from a Pulaski County Circuit Court order granting appellee Daniel Wren relief on his complaint for unredacted access to certain accident reports under the Freedom of Information Act (FOIA). The ASP argues that the circuit court erred in holding that its policy of redacting personal information from accident reports is a violation of FOIA; the ASP contends that the redacted information is exempted from disclosure because its disclosure is prohibited by the federal Driver’s Privacy Protection Act. We affirm. The parties stipulated to several facts before the circuit court. Appellee, an attorney, requested to inspect accident reports obtained by Troop A of the ASP from May 1, 2015, through May 21, 2015. His reason for requesting the accident reports was to search for and solicit potential clients for his law practice. The parties agreed that the accident reports are public records as defined by FOIA and that pursuant to Arkansas Code Annotated section I ¾27 — 53—202(b)(2)(B) (Supp. 2013)[1] the name and address of any minor should be redacted- from the reports. At issue before the circuit court was whether the Driver’s Privacy Protection Act • (DPPA) applied to the personal information contained in the accident reports, as ASP contended.[2] ASP’s policy, effective January 1, 2015, requiredj redaction of personal identifying information unless one of the fourteen DPPA exceptions applies. Accident reports would no longer be available for in-bulk inspection, but specific reports could be purchased for $10 each. According to the ASP policy, all nonpersonal information contained within accident reports would be released to a requesting third party — for example, factual information as to where, when, or -how a crash occurred or the type of vehicle involved. UThe court held a hearing on June 5, 2015,: at which appellee and Gregory Downs, general counsel for the ASP, testified. Downs testified that at the scene of an accident, a state trooper typically uses the Office of Motor Vehicles’ database to “auto-populate” the information in an accident report, although the information can also be physically entered into the computer. He testified that “ninety-nine percent of the time” information is gained from swiping the magnetic strip on the back of a driver’s license. He also testified that a person involved in an accident can get an unredacted copy of the report, including the other driver and any passenger’s personal information, without the other parties’ consent. There is no exception for the media. Yet, attached to appellee’s posthearing brief were five newspaper articles regarding fatal crashes in which the ASP reported the names and hometowns of those involved in fatal vehicle crashes in June 2015. In its amended order of July 8, 2015, the circuit court ruled in favor of the appellee and enjoined the policy of the ASP regarding redactions of accident reports. This appeal followed. The sole issue on appeal is whether the DPPA prohibits disclosure of personal information in accident reports, which are public records within the meaning of FOIA. We review issues of statutory construction de novo. Pulaski Cty. v. Ark. Democrat-Gazette, Inc., 370 Ark. 435, 439, 260 S.W.3d 718, 720 (2007). This court liberally interprets FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. Nabholz Constr. Corp. v. Contractors For Pub. Prot. Ass’n, 371 Ark. 411, 416, 266 S.W.3d 689, 692 (2007). Furthermore, we broadly construe FOIA in favor of disclosure. Id. |4In 1994, Congress passed the DPPA, 18 U.S.C. §§ 2721-2725, which regulates the disclosure of personal information contained in the records of state motor-vehicle departments. The legislation was introduced in response to growing concern over crimes committed by individuals who used Department of Motor Vehicle (DMV) records to identify and locate their victims.[3] Parus v. Kroeplin, 402 F.Supp.2d 999, 1005-06 (W-D.Wis.2005). In- addition, Congress found that many states were selling personal information collected by DMVs to individuals and businesses. See, e.g., 139 Cong, Rec. 29466, 29468, 29469 (1993); 140 Cong. Rec. 7929 (1994) (remarks of Rep. Goss). As explained by the United States Supreme Court: The DPPA establishes a regulatory scheme that restricts the States’ ability to disclose a driver’s personal information without the driver’s' consent. The DPPA generally prohibits any state DMV, or officer, employee, or contractor thereof, from “knowingly disclosing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record.” 18 U.S.C. § 2721(a). The DPPA defines “personal information” as any information “that identifies an individual, including an individual’s photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information,” but not including “information on vehicular accidents, driving violations, and driver’s status.” § 2725(3). A “motor vehicle record” is defined as.“any record that pertains to a motor vehicle operator’s permit, motor vehicle title, . motor vehicle registration, or identification card issued by a department of motor vehicles.” § 2725(1). Reno v. Condon, 528 U.S. 141, 144, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). The DPPA establishes criminal fines and a private cause of action for its violation. 18 U.S.C. §§ 2723, 2724. Despite its general prohibition, the DPPA lists fourteen permitted uses of personal information obtained from |fimotor-vehicle records. Id. § 2721(b). These exceptions include use by any government agency in carrying out its functions; use by any insurer or self-insured entity in connection with claims-investigation activities,-antifraud activities, rating, or underwritinjg; and use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains. Id. In Maracich v. Spears, — U.S. -, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013), the United States Supreme Court held that a law firm’s obtaining personal information from the state department of motor vehicles and sending communications for the predominant purpose of solicitation is not a use of personal information exempt from DPPA liability under subsection (b)(4)’s “litigation exception.” Generally speaking, redisclosure or resale by an authorized recipient of personal information under section 2721(b) is permitted only for a use permitted under subsection (b). Id. §• 2721(c). This appeal presents an issue of first impression 'in Arkansas. The ASP relies primarily on the following cases from other jurisdictions. In Camara v. Metro-N. R.R. Co., 596 F.Supp.2d 517 (D.Conn.2009), plaintiffs were employees who asserted that Metro-North had violated the DPPA' by improperly obtaining and using their personal information from motor-ve-hide records maintained by various state departments of motor vehicles. The court granted summary judgment to the defendant because the information obtained— plaintiffs’ driving histories — was not protected personal information under the statute. That case is not at all similar to the facts of the present case. The case most helpful to the ASP’s position, Pavone v. Law Offices of Anthony Mancini, Ltd., 118 F.Supp.3d 1004 (N.D.Ill. 2015), was entered after the circuit court had made its decision in the present case. In Pavone, the federal district court denied a law firm’s motion to dismiss a class action un der lfithe DPPA alleging that the firm obtained Illinois traffic crash reports and used the information in those reports to send targeted solicitations to persons involved in car accidents. The court held that personal information contained in crash reports did not fall within the scope of DPPA’s exception for information on vehicular accidents and that the DPPA protected personal information contained in crash reports. Of course, Pavone is not controlling precedent for this court. In addition, the ASP cites Whitaker v. Appriss, Inc., 2014 WL 4536559 (N.D.Ind. Sept. 11, 2014), in which the federal district court denied a motion to dismiss a DPPA complaint, finding that “it’s plausible that the personal information in the [police department motor vehicle] accident reports was obtained from the state department of motor vehicles, and thus Ms. Whitaker and Mr. Dunkin might have a claim under the DPPA.” Whitaker, 2014 WL 4536559, at *5. In contrast, in Mattivi v. Russell, 2002 WL 31949898 (D.Colo. Aug. 2, 2002), the federal district court granted the defendants’ (a newspaper publisher and editor) motion for summary judgment filed by Mattivi under the DPPA after the newspaper obtained and published an accident report of his single-car vehicle collision, for which he was charged with DUI. The court concluded that the accident report generated by the Colorado State Patrol and provided to defendants by that agency is not a “motor vehicle record” under the DPPA, and defendants’ publication of the report in the newspaper did not violate the DPPA. The court also concluded that the plain language of exception in section 2725(e) makes clear that Congress did not intend “information on vehicular accidents” to be included within the Act’s prohibition of disclosure of “personal information.” We find the Mattivi court’s reasoning persuasive. 17Keeping in mind the intent of Congress in passing the DPPA, it is clear that a vehicle-accident report is not included in the definition of “motor vehicle record,” regardless of whether, as a matter of convenience, some of the information included in an accident report may be taken from or verified by a database maintained by the Office of Motor Vehicles. Furthermore, Congress specifically provided that “personal information” does not include information on vehicular accidents. Because the DPPA does not prohibit information contained in accident reports from being released under FOIA, we affirm the ruling of the circuit court. Affirmed. Baker and Goodson, JJ., dissent. . Arkansas Code Annotated § 27-53-202, Reporting requirements, provides in part: (2)(A) Except as provided under subdivision (b)(2)(B) of this section, the accident report shall contain a full and complete list of tire names and addresses of all passengers occupying the taxicab, bus, or other vehicle at the time of the accident. .(B) The name and address of a minor occupant who" is únder eighteen (18) years of age shall be included in the report, but the name and address of the minor occupant shall: (i) Not be open to public inspection under this subchapter or the Freedom of Informa- • tion Act of 1967, § 25-19-101. et seq„ unless the requestor is: (a) The parent, legal guardian, or legal custodian of the minor occupant; or (b) A representative of an insurance company that insures a person, involved in the - accident; and (ii) Be redacted on copies including without limitation written, photostatic,, or electronic copies, produced under this subchap-ter or the Freedom of Information Act of 1967, § 25-19-101 et seq., unless the re-questor is identified in subdivision (b)(2)(B)(i) of this section, . ArLCode Ann. § 25-19-105(a)(l)(A), provides: "Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the. records.” . The DPPA was a part of the Violent Crime Control and Law Enforcement Act of 1994,