As a part of its argument that the state is the real party at interest, Chief Batiste argues that he did not act ultra vires. ECF No. 35 at 8. In response, Ms. Wilcox refers the Court to the WSP's Public Records Exemption Codes List, ECF No. 3-10, arguing that Chief Batiste violated redaction policies by disclosing PTCRs with personal information on them. ECF No. 56 at 12. In reply, Chief Batiste argues that there are separate codes governing redaction of DOL records and PTCRs, respectively. ECF No. 64 at 7.
A state officer acts ultra vires only when the officer acts without any authority whatsoever. Yakama Indian Nation v. State of Wash. Dep't of Revenue , 176 F.3d 1241, 1246 (9th Cir. 1999). The WSP disclosure laws support the conclusion that Chief Batiste did not act ultra vires and did act with authority. Id. However, the Court also finds that Chief Batiste acted beyond what Washington law required him to do by disclosing unredacted collision reports, and that Ms. Wilcox challenges Chief Batiste's personal actions in implementing Washington laws by disclosing unredacted collision reports, rather than challenging Washington's laws on public record disclosure. Because Ms. Wilcox is not challenging the state's policies themselves, Chief Batiste is the real party at interest, and therefore, is not entitled to Eleventh Amendment immunity in his personal capacity.
B. Qualified Immunity
The parties also dispute whether Chief Batiste is entitled to qualified immunity from monetary damages.[3] ECF No. 35 at 9; ECF No. 56 at 14.
Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz , 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (internal quotes omitted), abrogated in part on other grounds by Pearson v. Callahan , 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). When government officials invoke qualified immunity from suit, courts must decide the claim by applying a two-part analysis: (1) whether the conduct of the official, viewed in the light most favorable to plaintiff, violated a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged violation. See Pearson , 555 U.S. at 232-36, 129 S.Ct. 808. "[G]overnment officials performing discretionary functions [are entitled to] qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton , 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd , 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).
The order in which the Court addresses the two prongs of the qualified immunity test should be flexible, considering the circumstances of each case. Pearson , 555 U.S. at 236, 129 S.Ct. 808. The Court begins by assessing whether the right that Chief Batiste is alleged to have violated is clearly established.
*1124 A right from a federal statute or the constitution is clearly established when a reasonable official would understand that his or her actions are violating that right. Anderson , 483 U.S. at 640, 107 S.Ct. 3034. When defining the right, the court must be specific and avoid defining the right at a high level of generality. Ashcroft , 563 U.S. at 742, 131 S.Ct. 2074. "The dispositive question is 'whether the violative nature of particular conduct is clearly established.' " Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Ashcroft , 563 U.S. at 742, 131 S.Ct. 2074 ) (emphasis in original). "We do not require a case to be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft , 563 U.S. at 741, 131 S.Ct. 2074. In the Ninth Circuit, "the plaintiff bears the burden of proving that the rights she claims were 'clearly established' at the time of the alleged violation." Moran v. State of Wash. , 147 F.3d 839, 844 (9th Cir. 1998).
The first step in determining whether a right is clearly established is to define the right in question. Ashcroft , 563 U.S. at 741, 131 S.Ct. 2074. Here, the federal right that Ms. Wilcox alleges Chief Batiste to have violated is defined in the DPPA. ECF No. 39. Specifically, Ms. Wilcox alleges that Chief Batiste violated that right by creating collision reports with information obtained from driver's licenses and motor vehicle registrations and knowingly disclosing those collision reports to third parties for marketing purposes. See id. at 29. The federal right that Ms. Wilcox claims was violated, then, consists of two parts. First, whether knowingly disclosing the collision reports to third parties for marketing purposes violates the DPPA. Second, whether the information in those collision reports was protected by the DPPA.
As to the first aspect of the federal right, the Supreme Court addressed the use of DPPA-protected personal information for marketing in 2013. In Maracich v. Spears , the Supreme Court held that attorneys obtaining drivers' personal information for the purpose of soliciting business was not a permissible purpose under the DPPA. Maracich v. Spears , 570 U.S. 48, 76, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013). From the date of this decision, June 17, 2013, Chief Batiste was on notice that the acquisition of personal information protected by the DPPA for the purpose of attorney solicitation was not a permissible purpose under the DPPA. Id. The Court finds that this aspect of the federal right was clearly established.
The second aspect of the federal right is that the information in the collision reports was protected by the DPPA. Under the DPPA, personal information is protected if it is obtained from a motor vehicle record. 18 U.S.C. § 2724(a). A motor vehicle record is "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). In this case, the allegations are that Chief Batiste violated the DPPA by disclosing personal information contained within collision reports, with information obtained from the Washington State Department of Licensing through driver's licenses and motor vehicle registrations that the DOL creates. ECF No. 39 at 29. The issue is whether it was clearly established at the time Chief Batiste took these actions that personal information from collision reports were protected by the DPPA. See Marsh v. Cty. of San Diego , 680 F.3d 1148, 1158-59 (9th Cir. 2012) (holding that the right must be clearly established at the time the allegedly violative conduct was committed).
*1125 The case law was unclear at the time in question as to whether personal information from collision reports was protected under the DPPA during the time in which Chief Batiste's conduct occurred. There are some cases that determine that crash or accident reports are not "motor vehicle records" under the DPPA. See, e.g. , Mattivi v. Russell , No. Civ.A. 01-WM-533, 2002 WL 31949898, at *4 (D. Colo. Aug. 2, 2002). On the other hand, some courts have held that the information in collision reports is protected by the DPPA if the information comes from a motor vehicle record. See, e.g. , Pavone v. Law Offices of Anthony Mancini, Ltd. , 118 F.Supp.3d 1004, 1007 (N.D. Ill. 2015). In fact, there is little case law on what is considered a motor vehicle record within the meaning of the DPPA beyond various federal district court decisions and a few circuit court decisions with different facts, both published and unpublished. See Marsh , 680 F.3d at 1159 ("In any event, the opinions by a federal district court and an intermediate state court are insufficient to create a clearly established right.").
When this Court granted Ms. Wilcox's motion for preliminary injunction, this Court found that Chief Batiste's arguments that the DPPA does not apply to personal information on collision reports was unconvincing, given the plain language of the statute. ECF No. 14 at 5-6. Nonetheless, the Court cannot conclude that the question of whether the DPPA applies to a situation similar to the present case is "beyond debate." Ashcroft , 563 U.S. at 741, 131 S.Ct. 2074.
Given the unsettled state of the law at the time that Chief Batiste implemented and carried out his disclosure policy, the Court finds that the DPPA's protection of personal information on collision reports was not clearly established. The Court finds that Chief Batiste has qualified immunity from monetary damages regarding Ms. Wilcox's DPPA claim and section 1983 claim.
Abandoned Claims
Chief Batiste moved for summary judgment on Ms. Wilcox's claims of constitutional privacy and common law invasion of privacy. ECF No. 35 at 24-31. Ms. Wilcox failed to respond to these arguments. See ECF No. 56.
The failure to respond to arguments on a motion can be construed as consent to the entry of an order against the party that failed to respond. LCivR 7(e). Because Ms. Wilcox failed to respond to Chief Batiste's motion for summary judgment on the constitutional privacy claim or common law invasion of privacy claim, the Court grants summary judgment for both claims.
Additionally, even if Ms. Wilcox did not abandon her claim for invasion of privacy, Ms. Wilcox failed to show that she filed a claim with the Office of Risk Management ("ORM") prior to filing this lawsuit. All claims against the State of Washington or its officers must be presented to the ORM. Wash. Rev. Code § 4.92.100. A claimant can only file an action against the state official in court if sixty days had passed since the filing of the claim with ORM. Wash. Rev. Code § 4.92.110. There is no evidence that Ms. Wilcox followed this procedure. For this reason, Ms. Wilcox's invasion of privacy claim against Chief Batiste is dismissed.
John Doe Defendants
Ms. Wilcox named 300 John Doe Defendants in her original complaint and first amended complaint. ECF Nos. 1 & 39. Ms. Wilcox has not made any effort to identify or name these John Does. It has been twenty months since this case was originally filed. ECF No. 1.
*1126 If a plaintiff does not know the identity of a defendant when an action is filed, the plaintiff should be given an opportunity to identify the unknown defendants in discovery. Gillespie v. Civiletti , 629 F.2d 637, 642 (9th Cir. 1980) ; LCivR 10(a)(3). However, where a plaintiff fails to take reasonable efforts to identify the unknown defendants, the district court can dismiss for failure to prosecute. See Anderson v. Air West, Inc. , 542 F.2d 522, 524 (9th Cir. 1976) (upholding dismissal of complaint when defendants were not served for almost one year after filing for failure to prosecute); Carpenter Crest 401 v. Converti , No. CV-15-020004-PHX-JZB, 2017 WL 3190787, at *2-3 (D. Ariz. July 27, 2017) (dismissing plaintiff's complaint against Doe defendant for failure to prosecute).
Ms. Wilcox has made no effort to identify the Doe Defendants in this case. This case was filed on April 4, 2017, and twenty months have elapsed without Ms. Wilcox identifying the Doe Defendants. ECF No. 1. Accordingly, the Court dismisses Ms. Wilcox's claims against the Doe Defendants without prejudice.
The Preliminary Injunction
On the motion of Ms. Wilcox, this Court entered a preliminary injunction against Chief Batiste enjoining him from disclosing personal information in PTCRs and ordering him to redact each person's address, driver's license number, date of birth, sex, height, and weight from any collision reports that were disclosed. ECF No. 14. As discussed previously, his Court has determined that summary judgment is appropriately granted in favor of Defendants. Fed. R. Civ. P. 54 ; 58.
"A preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves ipso facto when a final judgment is entered in the cause." U.S. Philips Corp. v. KBC Bank N.V. , 590 F.3d 1091, 1093-94 (9th Cir. 2010) (emphasis in original). Accordingly, upon entry of judgment, the preliminary injunction, ECF No. 14, shall dissolve.
CONCLUSION
The Court finds that Chief Batiste is entitled to Eleventh Amendment immunity in his official capacity and qualified immunity in his individual capacity for any violations of the DPPA that may have occurred. Ms. Wilcox abandoned her other claims. Additionally, she failed to identify and prosecute the John Doe Defendants. Therefore, the Court will dismiss all claims against Chief Batiste with prejudice, all claims against the John Does without prejudice, and dissolve the preliminary injunction.
Accordingly, IT IS HEREBY ORDERED :
1. Defendant's Motion for Summary Judgment, ECF No. 35 , is GRANTED.
2. Ms. Wilcox's claims against Chief Batiste in his official and personal capacities are DISMISSED with prejudice.
3. Ms. Wilcox's claims against the 300 John Does are DISMISSED without prejudice.
4. Judgment shall be entered in favor of Defendants.
5. Upon entry of judgment, the Preliminary Injunction imposed by this Court, ECF No. 14 , is DISSOLVED.
IT IS SO ORDERED. The District Court Clerk is directed to enter this Order, provide copies to counsel, and close this case.

"Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief." The Presbyterian Church (U.S.A.) v. United States , 870 F.2d 518, 527 (9th Cir. 1989).